| | USDC SDNY |
| --- | --- |
| | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: _____ |
| | DATE FILED: 7/30/14 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ELIZABETH A. MATOS,      :

          Plaintiff,    :

    -v.-                 :

CAROLYN W. COLVIN,    :
Acting Commissioner of Social Security,

    :

          Defendant.    :
------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

13-CV-4525 (CM) (JLC)

*9/2/14*

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Colleen McMahon, United States District Judge:**

     *Pro se* plaintiff Elizabeth Matos brings this action pursuant to Section 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final determination by the

Commissioner of Social Security ("Commissioner") denying her applications for Supplemental

Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The Commissioner has

moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the

reasons set forth below, I recommend that the motion be granted.

<h3 align="center">I. BACKGROUND</h3>

**MEMO ENDORSED**

**A. Procedural History**

     Elizabeth Matos filed applications for SSI and DIB on March 28, 2011, alleging she was

unable to work as of February 22, 2011 due to an unspecified disabling condition.

Administrative Record ("R.") (Dkt. No. 13), at 73.[1] On June 1, 2011, the Social Security

---

[1]     The Administrative Record consists of one docket entry with twelve attached
supplemental documents. For clarity and consistency, citations to the record will refer to the
pagination which runs sequentially throughout the various entries and is marked in bold in the
lower right-hand corner.

*9/2/2014 – No objections have been filed, and
the time for filing has expired. I adopt the
Report of Judge Cott as the opinion of the Court and, on his recommendation, I
grant the motion ~~and dismiss~~ for judgment on the pleadings. Clerk to docket file.*

USDC SDNY
DATE SCANNED ___7/30/14___

Administration ("SSA") denied both applications, determining that she was not disabled based on claims of hypertension, asthma, or depression. *Id.* at 84. Matos requested a hearing and subsequently appeared without counsel before Administrative Law Judge ("ALJ") Michael J. Stacchini on December 2, 2011. *Id.* at 29-72, 90. In a decision issued on December 16, 2011, the ALJ found that Matos was not disabled as a result of either her SSI or DIB claims. *Id.* at 11-22. Matos then sought review of the ALJ's decision by the SSA Appeals Council on December 16, 2011, which was denied on May 17, 2013, making the ALJ's decision the final determination of the Commissioner. *Id.*

On June 28, 2013, Matos, again proceeding *pro se*, commenced this action by timely filing a form complaint (Dkt. No. 2), seeking judicial review of the ALJ decision pursuant to 42 U.S.C. §§ 405(g) and/or 1383(c)(3). Matos was granted *in forma pauperis* status on July 1, 2013. (Dkt. No. 4). Matos then filed an Amended Complaint ("Am. Compl.") on July 24, 2013, attaching additional medical records for the period of January 5, 2012 to July 5, 2013 (Dkt. No. 10). The Commissioner filed her answer on November 4, 2013 (Dkt. No. 12) and, on January 23, 2014, moved for judgment on the pleadings pursuant to Rule 12(c). *See* Motion for Judgment on the Pleadings (Dkt. No. 19); Memorandum of Law in Support of Judgment on the Pleadings ("Def. Mem.") (Dkt. No. 20). Matos has not filed any opposition to the motion; however, on March 27, 2014, she filed a letter with the Court, to which was attached an unsworn note from her doctor and additional medical records from the period of January 2, 2014 to March 11, 2014. (Dkt. No. 23). The Commissioner submitted no response to Matos' letter.

2

### B.  Administrative Record

#### 1.  Matos' History

Matos was born on July 27, 1957 and, at the time of her application, was 53 years old. R. at 81-82.  She has completed an eleventh-grade education.  *Id.* at 55.  Matos resides in an apartment in the Bronx with her husband and two pet poodles.  *Id.* at 41.  She stands four feet seven inches tall and weighs 130 to 135 pounds.  *See id.* at 178, 708.

Between November 1989 and February 22, 2011, Matos worked as a sales clerk for a pharmacy.  *Id.* at 179.  She spent approximately 90 percent of her day working as a cashier, which included standing for a majority of the time.  *Id.* at 42.  Some of her additional duties were to tag merchandise and stock shelves.  *Id.* at 42-43.  Her employment ended when the pharmacy could not afford a rent increase and went out of business.  *Id.* at 43.  She has been unemployed since February 22, 2011 and was receiving unemployment insurance benefits at the time of her ALJ hearing.  *Id.* at 45.

According to Matos' ALJ hearing testimony, she remained unemployed mainly due to her medical conditions and, in part, due to her inability to find work.  *Id.* at 43, 53.  Matos claimed that she sought employment following the close of the pharmacy but stopped searching due to the removal of two kidney stones and related complications, which resulted in three surgeries.  *Id.*  Matos also stated that, although her recovery from the kidney surgeries was "under control," her asthma difficulties had delayed any renewed efforts to seek employment. *Id.* at 44, 46.  She indicated that she was waiting to receive an asthma shot before resuming her employment search due to fear that a prospective employer would find her medical history unappealing.  *Id.* at 47-48.  Matos typically would be absent from work approximately once per month due to her asthma.  *Id.* at 48-49.  She stated that she had, on occasion, been capable of

walking up 15 flights of stairs to her apartment, but that she climbed to the top only with great

difficulty. *Id.* at 54. Matos also experienced hypertension, which she took medication to control.

*Id.* at 52. She had previous difficulties with her back, although Matos was not taking medication.

*Id.* at 53.

### 2. Medical Evidence

#### a. Lincoln Medical Center

##### i. *Asthma*

Matos was treated at Lincoln Medical Center ("Lincoln"), her primary care facility, by

numerous doctors between February 22, 2011 and December 16, 2011. *See generally id.* at 687-

1241.[2] Matos, who was a smoker until 2000, has a longstanding history with asthma. *See e.g.*,

*id.* at 1064, 1156. She was admitted to Lincoln with moderate persistent asthma on April 6, 2011

and remained hospitalized for two days for acute asthma exacerbation. *Id.* at 700, 1137.[3]

However, she did not require intubation and has never been intubated as a result of her asthma.

*Id.* at 19, 1064.[4] At the time of discharge, Matos continued to experience "mild diffuse wheezing

but with good air entry." *Id.* at 1137. She was permitted to return slowly to her usual activities,

as tolerated. *Id.* at 700. At a follow-up appointment on April 15, 2011, the examining physician

---

[2]      As part of her application to SSA, Matos submitted medical records from Boriken
Medical Center for the period of April 6, 1992 to February 19, 2004, and records from Lincoln
Medical Center for July 9, 2006 to February 22, 2011. *See id.* at 84. Those records, however,
are not relevant to the time period of her alleged disability and therefore will not be discussed
herein. *See Briscoe v. Astrue*, 892 F. Supp. 2d 567, 582 (S.D.N.Y. 2012) (records predating
alleged disability onset date typically not material) (citations omitted).

[3]      The ALJ's determination incorrectly states that Matos was released in stable condition
after only a few hours. *Compare id.* at 19 *with id.* at 700, 1135.

[4]      Matos was intubated on one occasion for a reason unrelated to her asthma, during surgery
for her kidney. *Id.* at 52, 1064.

determined that her asthma was under control. *Id.* at 1160.

As part of a pulmonary function report compiled on May 5, 2011, a spirometry test demonstrated that Matos had a forced airway volume in one second of 80% and a forced vital capacity of 87%, numbers indicating minimal signs of obstructive airway disease. *Id.* at 19, 712. However, in June 2011, Matos visited Lincoln twice more in order to determine a monitoring and treatment plan. *Id.* at 1150, 1154.  In July 2011, Matos was admitted multiple times with asthma-related complications and complained of shortness of breath, coughing, wheezing, and exacerbation of her conditions due to heat and humidity. *See id.* at 1162-1198.  She was assessed as having moderate persistent asthma, with no improvement to her cough and wheezing despite treatment. *Id.* at 1195.

A radiology report taken on July 5, 2011 stated that she had an "essentially clear chest." *Id.* at 959.  A July 10, 2011 radiology report established that there had been no significant change. *Id.* at 1216.  Progress notes indicate that Matos was stable and in no apparent distress. *Id.* at 1192, 1195, 1197.  On August 16, 2011, a follow-up radiology examination again noted no significant changes from the previous report. *Id.* at 1103.  However, during another visit to the Lincoln emergency room on August 18, 2011, Matos was again diagnosed with moderate persistent asthma with acute exacerbation. *Id.* at 1103.  During an August 29, 2011 visit, the attending physician noted that she had severe persistent asthma that was poorly controlled, but that Matos was not in acute distress. *Id.* at 1203.  The report also noted that Matos was a good candidate for an additional asthma drug, and should begin use following an upcoming surgery. *Id.* at 1204.  Matos was again seen on November 22, 2011 at Lincoln, and her asthma was reported as being controlled by a "variety of inhaled, oral, inject[ed] and nebulized medications." *Id.* at 1220.  The attending physician advised that Matos should avoid exertion and exposure to

heat, humidity, cold air, colds, pets, and pollen, as they could trigger asthma attacks. *Id.*

ii. _Other Health Issues_

After being diagnosed with kidney stones, Matos underwent a series of surgeries on

August 30, September 23, October 6, and November 17, 2011 to remove them. *Id.* at 1069,

1079, 1084, 1115. At the ALJ hearing, Matos stated that she no longer had pain from the kidney

stones, although she reported she still had one small stone which was being monitored and

required follow-up to ensure that it was under control. *Id.* at 43-44. Matos' records also include

a diagnosis of hypertension, but consistently describe it as benign and well-controlled by

medication. *See e.g., id.* at 20, 1150, 1159, 1170. Radiology examinations of her lungs and

kidneys also revealed degenerative changes to the dorsal spine. *Id.* at 1217. As for treatment of

mental health issues, Matos' records indicated that she denied having any anxiety while also

listing it under her prior medical problems. *Compare id.* at 1150, *with id.* at 1167 *and id.* at

1223.

**b. Consultative Examinations**

Upon referral from the SSA, Dr. Sharon Revan performed a consultative physical

examination of Matos on May 2, 2011. *Id.* at 710. Revan diagnosed Matos with asthma,

hypertension, and hypercholesterolemia. *Id.* at 709. Revan observed that Matos did not appear

to be in acute distress, had a normal gait, could walk on her heels and toes without difficulty,

could squat fully, and could rise from her chair without difficulty. *Id.* at 708. Revan noted mild

limitations with walking long distances due to shortness of breath and limitations with sitting due

to back pain. *Id.* at 710. Revan found no limitations with standing or lying down, and only mild

limitations as to Matos' other daily living activities due to her asthma. *Id.*

On May 26, 2011, Dr. B. Gajwani, also upon referral from the SSA, prepared a physical

residual functional capacity ("RFC") assessment based on the medical evidence Matos submitted

as part of her claim. *See id.* at 904, 909. Gajwani concluded that Matos possessed an RFC

consistent with light work, finding only mild limitations on Matos's ability to walk long

distances and determining that her respiratory impairments did not satisfy the criteria of a

disability recognized under SSA listings. *See id.* at 910. The report also noted that, although her

impairment was moderate, Matos should avoid concentrated exposure to fumes, odors, dusts,

gases, and poor ventilation. *Id.* at 907.

On May 2, 2011, Matos met with Dr. Dmitri Bougakov on referral for a psychiatric

consultative examination. *Id.* at 705. Bougakov found that Matos did not exhibit any significant

psychiatric or cognitive symptoms and that, with the exception of mild difficulties performing

simple tasks and learning new tasks, she did not have significant vocational difficulties. *Id.* On

May 12, 2011, a psychiatric review was prepared by state agency psychologist Dr. R. Nobel. *Id.*

at 713. Nobel noted that Matos suffered from an anxiety-related disorder, but found that it was

not severe. *Id.*

### 3.   Hearing Before the ALJ

Matos represented herself at the hearing held before ALJ Stacchini on December 2, 2011.

*Id.* at 31, 34-35. Questioned by the ALJ first about her work history, Matos stated that her most

recent employment had ended because the business closed, and that she had been looking for

work but was "sick with kidney stones for three months" and was "done looking." *Id.* at 43. The

ALJ then asked Matos about her medical history, and Matos described her medication regimens

for asthma as well as for hypertension and high cholesterol. *Id.* at 50-53. She voiced her

frustration with being unable to find work due to the problems with wheezing from asthma,

which she hoped would stop once she got injections. *Id.* at 52-53. Finally, the ALJ asked Matos

7

about her daily activities around the house and her hobbies. *Id.* at 54-56. Matos stated that she did not go out often and enjoyed staying at home and playing with her poodles, despite the fact that she has been told by doctors that she should get rid of them because of her asthma. *Id.* at 55-56.

The ALJ then took testimony from two witnesses who joined the hearing by telephone: Dr. Gerald Greenberg, a medical expert who is a specialist in internal medicine and pulmonary medicine, and David Festa, a vocational expert who holds a master's degree in rehabilitation counseling. *Id.* at 58, 64. Greenberg concluded that Matos had back pain, hyperlipidemia, anxiety, asthma, and hypertension, but that none of the impairments was severe enough individually or in combination to meet or equal a qualifying disability under the SSA listings. *Id.* at 63. Greenberg also observed that, although Matos' kidney stones were a medically determinable impairment, they did not meet the durational requirement to qualify as a disability because they were not expected to last longer than 12 months. *Id.* at 63-64. In addition, Greenberg noted that Matos had daily living activities within normal limits with asthma precautions, and did not identify anything that would preclude Matos from working in an asthma-safe environment. *Id.* at 59, 64.

Festa noted that the position of sales clerk, Matos' previous occupation, typically required only a light exertional level. *Id.* at 67. Festa testified that a person of the same age, education, and work experience as Matos -- who was capable of doing the full range of light work required for a sales clerk but subjected to the same physical limitations as Matos, including no exposure to irritants -- would still be capable of performing her same past relevant work. *Id.* at 67-68. However, when asked by the ALJ, Festa opined that such a hypothetical individual would not be able to perform her past work if, in addition to the limitations listed above, she

8

could only carry out sedentary work. *Id.* at 68-69. Nonetheless, he noted that there exists other work in the national and regional economy that such an individual, limited to sedentary work, could adequately perform. *See id.* at 66, 69.

## II. DISCUSSION

### A. Legal Standards

#### 1. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for, and a court may grant, judgment on the pleadings "where the material facts are undisputed and where a party is entitled to judgment as a matter of law based upon the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). "[A] failure to respond to a 12(c) motion cannot constitute 'default' justifying dismissal of the complaint" if the pleadings are otherwise "sufficient to withstand dismissal." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000) (quoting *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983)). In other words, even where a motion for judgment on the pleadings is unopposed, the district court "must review the record and determine whether the moving party has established its entitlement to judgment as a matter of law." *Lynn v. Comm'r of Soc. Sec.*, No. 13 Civ. 917 (CBA), 2013 WL 1334030, at *10 (E.D.N.Y. Mar. 30, 2013) (citing *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)) (comparing to standard of review for summary judgment motion). Furthermore, where the party against whom judgment is sought proceeds *pro se*, the well-established rule that an unrepresented party's pleadings should be construed liberally and to raise the strongest arguments they suggest still applies. *See Lynn*, 2013 WL 1334030, at *10 (citation omitted).

9

## 2. Substantial Evidence Review

The district court must uphold the Commissioner's final determination as to a claimant's disability if it applied the correct legal standards and was supported by substantial evidence. *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and alterations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). As part of its analysis, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). The court may then "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). The reviewing court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). Stated otherwise, "once an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

10

### 3. The Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Physical or mental impairments must be "of such severity that [the individual] is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  As a general matter, in assessing whether a claimant's impairments meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that the Social Security Act is a remedial statute, to be broadly construed and liberally applied." *Mongeur*, 722 F.2d at 1037; *see also Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). Specifically, the Commissioner's decision must ultimately take into account: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur*, 722 F.2d at 1037 (citations omitted).

#### a. Five-Step Inquiry

The Commissioner's inquiry into disability follows a sequential, five-step inquiry. *See Cichocki v. Astrue*, 729 F.3d 172, 173 n.1 (2d Cir. 2013); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). At the first step, the Commissioner must determine whether the claimant is presently employed. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not, the Commissioner then determines at step two if the claimant has a "severe" impairment limiting the claimant's capacity to work. *Id.* § 404.1520(a)(4)(ii). If so, under step three, the Commissioner considers whether

the impairment satisfies the criteria of one of the impairments included in the SSA's listings. *Id.*
§ 404.1520(a)(4)(iii). Where the impairment is properly listed, the claimant is found disabled,
*id.* § 404.1520(d); where it is not, the Commissioner continues to the fourth step to determine the
claimant's RFC to perform the claimant's past relevant work. *Id.* § 404.1520(a)(4)(iv). Finally,
if the claimant is unable to perform claimant's past work, the Commissioner completes the fifth
step by determining whether the claimant, based on the RFC, age, education, and experience, is
capable of undertaking any other work in the national economy. *Id.* § 404.1520(a)(4)(v).

### b. Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530
U.S. 103, 110-11 (2000). Consequently, "the social security ALJ, unlike a judge in a trial, must
on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-
adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)
(internal quotation marks and citation omitted).  As part of this duty, the ALJ must "investigate
the facts and develop the argument both for and against granting benefits." *Sims*, 530 U.S. at
111. Specifically, under the applicable regulations, in making a disability determination, the
ALJ is required to develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34,
37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)-(f)). This responsibility "encompasses not
only the duty to obtain a claimant's medical records and reports but also the duty to question the
claimant adequately about any subjective complaints and the impact of the claimant's
impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07 Civ. 11099 (GWG),
2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citing *Cruz v. Sullivan*, 912 F.2d 8, 11-12 (2d
Cir. 1990)).

Whether the ALJ has met his duty to develop the record is a threshold question. Indeed,
before reviewing whether the Commissioner's final decision is supported by substantial evidence
under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a
full hearing under the Secretary's regulations' and also fully and completely developed the
administrative record." *Scott v. Astrue*, No. 09 Civ. 3999 (KAM), 2010 WL 2736879, at *12
(E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751,
755 (2d Cir. 1982)); *see also Rodriguez v. Barnhart*, No. 02 Civ. 5782 (FB), 2003 WL
22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the
record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel*, 174 F.3d 59 (2d
Cir. 1999)).

### c.  Assessment of Claimant's Credibility

Finally, a reviewing court must defer to an ALJ's findings as to the credibility of a
claimant. *Osorio v. Barnhart*, No. 04 Civ. 7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y.
May 30, 2006). The ALJ follows a two-step analysis for evaluating a claimant's subjective
assertions of pain and other limitations. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing
20 C.F.R. § 404.1529(a)). First, the ALJ must weigh whether "the claimant suffers from a
medically determinable impairment that could reasonably be expected to produce the symptoms
alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). Second, if the answer to the first query is yes, the
ALJ then considers "the extent to which [the claimant's] symptoms can reasonably be accepted
as consistent with the objective medical evidence and other evidence of record." *Id.* (citing 20
C.F.R. § 404.1529(a)) (internal quotation marks omitted).

Because "an individual's symptoms can sometimes suggest a greater level of severity of
impairment than can be shown by the objective medical evidence alone," the ALJ may take into

13

account a variety of other considerations as evidence. *Pena*, 2008 WL 5111317, at *11. These include: a claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that aggravate the symptoms; treatment and medication necessitated by the pain or other symptoms and their effects; other alleviating measures taken by the claimant; and other factors that relate to the claimant's functional limitations and restrictions stemming from pain or other symptoms. *Id.* (citing SSR 96–7p, 1996 WL 374186, at *3 (SSA July 2, 1996)).

So long as the "findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Vargas v. Astrue*, No. 10 Civ. 6306 (PKC), 2011 WL 2946371, at *11 (S.D.N.Y. July 20, 2011) (quoting *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). However, these findings must "be set forth with sufficient specificity to permit intelligible plenary review of the record." *Pena*, 2008 WL 5111317, at *10 (internal quotation marks omitted) (quoting *Williams v. Bowen,* 859 F.2d 255, 260-61 (2d Cir. 1988)).

**B. The ALJ's Decision**

In his decision dated December 16, 2011, ALJ Stacchini determined that Matos was not disabled as defined by the Social Security Act and relevant regulations and therefore denied her claims for SSI and DIB benefits. R. at 15-22. Following the five-step evaluation process, the ALJ first determined that Matos had not been involved in any substantial gainful employment after February 22, 2011, the alleged onset date. *Id.* at 16. At step two, the ALJ found that Matos had the following severe impairments: asthma, hypertension, hyperlipidemia, degenerative changes to her dorsal spine, and obesity. *Id.* By contrast, the ALJ found that Matos' kidney stones were a non-severe impairment and her anxiety a non-medically determinable impairment.

14

*Id.* at 17. At step three, the ALJ concluded that Matos did not have an impairment or combination of impairments that satisfy the requirements of the SSA listings. *Id.* At step four, the ALJ subsequently found that Matos had the RFC to perform the full range of light work, was "limited to only occasional climbing of ramps or stairs; only occasional balancing, stooping, kneeling, crouching and crawling; with no climbing ropes, ladders or scaffolds," and should "avoid moderate exposure to irritants such as fumes, dust, gases, poorly ventilated areas, pollen and pets (including dogs and cats, but excluding poodles)." *Id.*[5] In accordance with the testimony of the vocational expert, the ALJ determined that Matos was capable of performing her past relevant work as a sales clerk, as it would not require her to perform activities precluded by her RFC. *Id.* at 21. Consequently, the ALJ did not proceed to the fifth step of the analysis to consider other work in the national economy available to Matos. *See id.* at 21-22.

## C. Analysis

Although Matos has not opposed the motion, the Court liberally construes her complaint to raise the strongest arguments it suggests, specifically that the ALJ did not comply with the applicable legal standards and made a determination that was not sufficiently supported by the evidence. *See, e.g.*, *Wellington v. Astrue*, No. 12 Civ. 3523 (KBF), 2013 WL 1944472, at *3 (S.D.N.Y. May 9, 2013). Upon review of the record, however, the Court finds that the ALJ did not commit error on either point and that his determination should be affirmed.

---

[5]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

15

## 1. The ALJ Properly Developed the Record

As an initial matter, the ALJ properly fulfilled his duty to develop the evidentiary record

before making his determination that Matos was not entitled to disability benefits. In addition to

thoroughly questioning Matos and then soliciting the testimony of both a medical and vocational

expert at the hearing, the ALJ admitted into the record voluminous submissions from Matos'

numerous physicians at Lincoln, as well as the various reports from consultative physicians.[6]

There is no indication that Matos sought any additional time or assistance to submit further

documents or evidence for consideration. *See, e.g., Lynn v. Comm'r of Soc. Sec.*, No. Civ. 917

(CBA), 2013 WL 1334030, at *13 (E.D.N.Y. Mar. 30, 2013) (ALJ "entitled to make a decision

based on the available record" where he requested psychiatric records, allowed for their

submission, and no request for further time made by claimant) (citing 20 C.F.R. § 404.1516);

*Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010) (duty to develop

record fulfilled where ALJ provided additional time to submit additional records upon request).

Nor is there any reason to believe, based on the record, that there were any other potential

sources of relevant medical evidence that the ALJ could have pursued. *See, e.g., Atkinson v.

Barnhart*, 87 F. App'x 766, 768 (2d Cir. 2004) (failure to develop record where claimant

indicated she received treatment at two hospitals, yet ALJ sought medical records from only

one). Consequently, the Court finds that the record upon which the ALJ relied was properly

---

[6]     The record indicates that Matos does not have a treating physician whose opinion should
be accorded special weight because she did not have continuity of treatment or a developed
doctor/patient relationship with any physician at Lincoln.  R. at 50 ("every time I go to Lincoln
Hospital I never get the same doctor"); *see Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir.
2011) (medical opinion of physician who examined patient only several times not entitled to
extra weight of treating physician even if claimant regularly visited same institution with access
to all of claimant's medical records).  Therefore, the well-established rule outlining the deference
that must be afforded to a treating physician, *see Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.
2008), is not relevant to the Court's review in these circumstances.

16

developed.

## 2. The ALJ's Determination Was Supported by Substantial Evidence

Matos' form complaint uses boilerplate language alleging that the ALJ's decision was not supported by substantial evidence. Am. Compl., ¶ 9. The Court construes this general allegation specifically as a challenge to the ALJ's determination that Matos retained the RFC to perform light work, subject to certain limitations, including her past relevant work as a sales clerk. *See Wellington*, 2013 WL 1944472, at *3. Upon review of the administrative record, the Court is satisfied that this finding was properly supported by substantial evidence and should be affirmed.

### a. Findings as to Asthma

Of the impairments Matos alleges, asthma is the only condition for which there were documented limitations on her ability to work, but it is evident from the record that these were not sufficiently serious so as to prevent Matos from light work. Dr. Revan found only mild limitations with activities of daily living related to asthma. *Id.* at 710. Revan also found mild limitations to Matos' walking distances, but none with standing or lying down. *Id.* Revan also noted that Matos can shower and dress herself without help and is able to cook and shop, although she cannot do any cleaning or laundry due to her asthma. *Id.* at 708. Dr. Gajwani likewise found mild limitations as to walking distances due to her asthma, but ultimately found Matos had an RFC consistent with light work. *Id.* at 910.

Consistent with the consultative physician examinations, the rest of the medical record demonstrates that Matos' asthma would not severely impair her ability to perform work during the period of alleged disability. Matos visited the hospital regularly for her asthma, complaining of asthma-related symptoms such as wheezing, shortness of breath, and cough. *See e.g.*, *id.* at 738, 745, 1103, 1108, 1150, 1170. However, chest x-rays did not indicate significant lung

17

damage. *See e.g., id.* at 733 (fibrotic strand noted but findings remain unchanged); *id.* at 735 (no

pleural effusions even though stranding throughout right lung); *id.* at 1214 (no significant

interval change and no pleural effusions). A spirometry test revealed minimal signs of

obstructive airway disease. *See id.* at 712.

In the hospital reports, Matos' asthma condition was regularly described as "moderate,"

*see e.g., id.* at 1103, 1132, 1164, and "well-controlled" by medication, *id.* at 1120, 1160.

Although she required intermittent treatment, Matos was always cleared for "return to usual

activities" following visits to the hospital. *See e.g.,* 700, 1138, 1219, 1221. For most of the

alleged disability period, doctors diagnosed Matos with "moderate persistent" asthma. *See e.g.,*

*id.* at 1126, 1137, 1143, 1156, 1195. Starting in July of 2011, medical reports began to classify

her asthma as "severe persistent." *See e.g., id.* at 1192, 1203, 1208. Even in the face of this

heightened classification, however, Dr. Riyad Basir, Chief of Pulmonary and Critical Care at

Lincoln, wrote a letter in November 2011 stating that Matos' "condition was being controlled by

a variety of inhaled, oral, inject[ed] and nebulized medications." *Id.* at 1220. Additionally,

while he noted that acute attacks can occur as a result of exercise, heat, humidity, cold air, colds,

pets, and exposure to pollen, he advised her to avoid exertion and exposure to those triggers –

which were also adopted by the ALJ as some limitations to Matos' work environment. *Id.* at 17,

1220. Basir did not otherwise note any other limitations to work.

Finally, Matos' own testimony corroborated the reports in the record. As the ALJ noted,

despite her asthma, Matos conceded that she could occasionally walk up 15 flights of stairs,

continued to keep two poodles as pets, and sought new jobs after her alleged disability onset date

(claiming she only stopped seeking employment because of her kidney stones, not her asthma).

*Id.* at 41, 43, 54. In sum, the consistent thrust of the medical reports, from both consulting

physicians as well as medical professionals seen in the first instance by Matos, corroborated by

Matos' own testimony, established that there was substantial evidence to support the ALJ's

determination. *See, e.g.*, *Mongeur*, 722 F.2d at 1039 (testimony of consultative physician

supported by medical records serves as substantial evidence); *Diaz v. Shalala*, 59 F.3d 307, 315

(2d Cir. 1995) ("[O]pinions of three examining physicians, plaintiff's own testimony, and the

medical tests together constitute substantial evidence.").

### b. Findings as to Other Health Issues

The ALJ's determination that Matos' kidney stones do not interfere with her ability to

perform light work is supported by substantial evidence. The medical expert at the hearing

testified that her stones would only last a couple of weeks to a couple of months. R. at 61. This

is supported by the medical reports in the record, which show that she was in stable and good

condition after receiving treatment. *Id.* at 1191, 1069. At a follow-up appointment, there was no

further evidence of obstruction or additional stone formation. *Id.* at 1239. These findings are

also consistent with Matos' own statements. At the hearing she testified that, although she had

recently received another stone, she did not experience any stone-related pain and only

sometimes felt soreness during urination. *Id.* at 45. Matos added that while kidney stones had

prevented her from seeking employment during a three-month period, her kidney stones were no

longer a severe impairment to her and she had been actively seeking employment similar to the

type of work she had before, albeit unsuccessfully. *Id.* at 18, 43, 45-46.

The finding that Matos' hypertension, hyperlipidemia, back pain, and mental health do

not have any significant bearing on her ability to work is also supported by substantial evidence.

Dr. Revan stated that Matos controlled her hypertension with medication. *Id.* at 707. Multiple

hospital records classify her hypertension as "benign" and show that she took medication to

19

control it. *See, e.g., id.* at 1150, 159, 1080, 1170, 1202. At her hearing, Matos confirmed this fact. *See id.* at 52. Revan diagnosed Matos with hypercholesterolemia, also called hyperlipidemia, but the doctor did not note any limitations which would affect Matos' ability to perform work as a result. *See id.* at 709-10. Revan's report stated that Matos takes cholesterol medication. *See id.* at 707. Dr. Greenberg also found no evidence of vascular disease related to hyperlipidemia. *Id.* at 62. The record supports this conclusion, as there was no hospital record of Matos receiving treatment for hyperlipidemia during the period of alleged disability. *See id.* at 505 (last medical record noting history of hyperlipidemia dated February 27, 2011). Matos testified that she took medication for the hyperlipidemia and that she had never had a heart attack or vascular incident. *Id.* at 62-63. Furthermore, Matos testified that the condition did not affect her ability to work. *Id.* at 63.

As to Matos' back pain, Dr. Revan found that Matos had some limitations on her ability to sit. *Id.* at 710. A lumbar x-ray showed that Matos did not have any compression fractures or subluxation, and only mild degenerative endplate lipping, *id.* at 734, although a chest x-ray noted degenerative changes to the dorsal spine, *id.* at 1214. However, consistent with a finding that any limitation from her back pain is mild, Matos testified that she does not take any related medication or engage in physical therapy. *Id.* at 53, 57. Matos was also able to squat in full, exhibited a normal gait, could walk on heels and toes without difficulty, was able to rise from a chair without difficulty, and used no assistive devices. *Id.* at 708. Thus, there was substantial evidence to support a finding that Matos' back pain did not impact her capacity for at least light work.

Regarding her mental health, consultative physician Dr. Bougakov found no significant psychiatric problems. *Id.* at 705. Dr. Nobel also found no mental impairments. *Id.* at 713, 720.

Though the record on Matos' history with anxiety is inconsistent, *see e.g.*, *id.* at 505, 1150, 1167, 1223 (noting either denial of anxiety or past diagnoses), anxiety was only briefly touched upon during the hearing, and Matos did not provide any testimony related to difficulties from anxiety which would conflict with the findings of Bougakov and Nobel.

### c. Findings as to Capacity for Past Relevant Work

Finally, substantial evidence supported the ALJ's determination, building on the weight of the record already described, that Matos retained the RFC to perform her past relevant work as a sales clerk. The ALJ relied on the testimony of the vocational expert, Festa, whose credentials do not appear to be in doubt. *Id.* at 64-66 (testimony concerning Festa's 33 years of experience as certified rehabilitation counselor). Festa opined that, based on his understanding of Matos' RFC as presented in the record and the physical and mental demands of Matos' previous job as a sales clerk, she would be able to perform the same. *Id.* at 68. Festa also testified that his opinion was consistent with the *Dictionary of Occupational Titles* ("DOT"), the United States Department of Labor publication that establishes the minimum skill and exertional level required for specific positions, in this case, sales clerk. *Id.*; *See Brault*, 683 F.3d at 446 ("Because of the detailed information appended to each DOT code, the codes are useful for determining the type of work a disability applicant can perform."). Courts in this Circuit generally have found no reason not to defer to ALJ determinations where, as here, they are consistent with the occupational information provided by the DOT. *See, e.g., Allen v. Astrue*, 05-CV-0101 (NAM) (GJD), 2008 WL 660510, at *11 (N.D.N.Y. Mar. 10, 2008); *Lind v. Astrue*, 530 F. Supp. 2d 456, 464 (W.D.N.Y. 2008). Accordingly, the Court finds no fault in the ALJ's reliance on the vocational expert's testimony that Matos, based on her sufficiently established RFC, was capable of performing her past work.

21

**D. Newly-Submitted Evidence Does Not Warrant A Remand**

In addition to the administrative record compiled by the ALJ as part of his determination,

Matos has submitted additional evidence to the Court in the form of: (1) doctors' notes and visit

reports for the period of January 5, 2012 through July 5, 2013, attached to her amended

complaint, *see* Exhibits A-F to Am. Compl.; and (2) medical reports covering the period of

January 2, 2014 to March 11, 2014, filed in lieu of an opposition to the Commissioner's motion,

*see* Letter dated March 27, 2014.  As a matter of law, evidence from outside the administrative

record may not be considered on judicial review of the Commissioner's findings.  *See Gonzalez*

*v. Astrue*, No. 10 Civ. 3667 (DAB) (JLC), 2011 WL 4024707, at *11 (S.D.N.Y. Sept. 12, 2011),

Report and Recommendation, *adopted by* 2012 WL 3835522 (S.D.N.Y. Sept. 4, 2012); 42

U.S.C. § 405(g) ("The court shall have the power to enter, upon the pleadings and transcript of

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security[.]").

Courts may instruct the Commissioner, however, to consider such evidence on remand,

where it is: (1) new and not repetitive of what is in the existing record; (2) material in the sense

of being both probative and relevant to the time period during which benefits were denied; and,

(3) where there is good cause for the failure to include it in an earlier proceeding.  *Jones v.*

*Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (quoting *Tirado v. Bowen*, 848 F.2d 595, 597 (2d Cir.

1988)).  Materiality requires that there be a reasonable possibility that the "new evidence would

have influenced the [Commissioner] to decide [the] application differently."  *Id.*

Here, the new evidence Matos seeks to introduce does not merit remand for further

consideration.  Matos' application period being reviewed on appeal is from February 22, 2011 to

December 16, 2011, and on their face the records attached to the amended complaint and Matos'

22

letter to the Court postdate this timeframe. Although evidence generated after the date of an ALJ decision *may* be considered material where it directly supports earlier, relevant contentions of disability, *see Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004), the records in question here do not provide such a basis of support.

First, some of the records cite primary diagnoses which were never alleged during the time period of disability. *See e.g.*, Ex. A to Am. Compl. at 1, 4 (contact dermatitis and other eczema); Ex. B to Am. Compl. at 5 (knee, leg, ankle, and foot injury); *id.* at 12 (joint pain); Letter dated Mar. 27, 2014 at 9, 22, 37 (alopecia and hair loss). These records are irrelevant to Matos' earlier claims of disability and are therefore immaterial. Second, even the new records related to Matos' asthma, kidney stones, and back pain, which are relevant conditions for the time of alleged disability, either repeat what was already in the evidence before the ALJ or fail to support Matos' contentions of disability for the relevant period. For instance, a newly-included report only notes mild degenerative changes in relation to Matos' back pain, which is consistent with earlier reports. *Compare* R. at 1214, *with* Ex. B to Am. Compl. at 14. Matos underwent an additional kidney stone procedure in March of 2012, but the recovery was only expected to last five days. *See* Ex. C to Am. Compl. at 9. This new procedure does not alter the previous finding that Matos' kidney impairments from August through November of 2011 did not meet a durational requirement of at least twelve months for a listing. *See* R. at 63-64. Finally, Matos' new submissions, the bulk of which relate to additional asthma treatment, only demonstrate complaints about recent flare-ups and do not shed any new light about the seriousness of the asthma during her application period. *See* Letter dated Mar. 27, 2014 at 16 ("complains of having exacerbation in past 3 days and today"); *id.* at 19 (noting "recent exacerbation" during a February 11, 2014 visit).

Accordingly, there is no basis for the Court to remand the newly-submitted evidence to the Commissioner for her consideration as to Matos' February 2011 disability application. However, to the extent that Matos seeks relief in the form of benefits for the period covered by the newly-submitted records, the appropriate recourse for her would be to file a new application with the SSA. *See e.g., Casiano v. Apfel*, 39 F. Supp. 2d 326, 332 (S.D.N.Y. 1999) (where evidence of change in condition following relevant application period submitted, proper relief for claimant is to file new application for benefits).

## III.  CONCLUSION

Because the Commissioner's determination that Matos was not disabled during the disputed period is supported by substantial evidence in the record, it should be affirmed.  I therefore recommend that the Commissioner's motion for judgment on the pleadings be granted, and that the case be dismissed.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge McMahon.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596

24

F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. If Matos does not have

access to cases cited herein that are reported on LexisNexis or Westlaw, she should request

copies from counsel for the Commissioner. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir.

2009).

Dated: New York, New York
    July 30, 2014

JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation has been mailed to:**

Elizabeth A. Matos
388 East 141st Street, #15F
Bronx, NY 10454